# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Jeffrey Stewart,**
**Petitioner Below, Petitioner**

**FILED**

February 9, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-0300** (Nicholas County 06-C-185)

**David Ballard, Warden,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jeffrey Stewart, by counsel D. Adrian Hoosier II, appeals the Circuit Court of Nicholas County's February 27, 2014, order denying his petition for writ of habeas corpus. Respondent David Ballard, Warden, by counsel Christopher S. Dodrill, filed a response. On appeal, petitioner alleges that the circuit court erred in denying habeas relief on the ground of ineffective assistance of counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2004, a grand jury indicted petitioner on two counts of murder, two counts of malicious assault, and three counts of wanton endangerment involving a firearm. Petitioner's trial began in December of 2004, and, two days later, the jury returned a verdict of guilty on two lesser-included counts of second degree murder. The remaining charges were not presented to the jury. Thereafter, the circuit court sentenced petitioner to consecutive sentences of forty years on each count of second degree murder. Petitioner appealed this conviction, and the Court refused the same by order entered on January 11, 2006.

In November of 2006, petitioner filed a *pro se* petition for writ of habeas corpus in the Circuit Court of Randolph County, which was then transferred to the Circuit Court of Nicholas County. In March of 2007, the circuit court appointed an attorney, Howard J. Blyler, to represent petitioner in his habeas proceeding. In April of 2009, petitioner requested that Mr. Blyler be allowed to withdraw as counsel, stating he had lost trust in Mr. Blyler's representation. Thereafter, Mr. Blyler filed a motion to withdraw as counsel. At a hearing on August 5, 2008, the circuit court granted the motion to withdraw and appointed J.B. Rees to represent petitioner.

In December of 2009, petitioner filed a *pro se* motion to have the circuit court relieve Mr. Rees, and counsel thereafter filed a motion to withdraw. Approximately six months later,

1

petitioner filed a *pro se* petition for amended writ of habeas corpus. Thereafter, the circuit court permitted Mr. Rees to withdraw and appointed Jennifer Hewitt to represent petitioner. However, in December of 2010, Ms. Hewitt filed a motion to withdraw due to petitioner's threat to file a disciplinary complaint against her. The circuit court granted the motion the following day and appointed petitioner's current counsel, D. Adrian Hoosier II, to represent him in the habeas proceeding.

In January of 2013, petitioner filed a second *pro se* amended petition for writ of habeas corpus. Following this, petitioner's counsel filed a supplemental petition for writ of habeas corpus. The circuit court held an omnibus evidentiary hearing in May of 2013 and later denied the supplemental petition. This appeal follows.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner asserts that the circuit court erred in denying his supplemental petition for writ of habeas corpus on the lone ground of ineffective assistance of counsel.[1] In support of his assignment of error, petitioner re-alleges several instances of ineffective assistance on the part of his trial counsel, including the following: (1) failure to move for dismissal of the indictment; (2) failure to object to false evidence; (3) failure to object to the introduction of crime scene evidence; (4) failure to call an expert witness; (5) and other cumulative errors.

Upon our review and consideration of the circuit court's order, the parties' arguments, and record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on the errors he assigns on appeal, which were also argued below. Indeed, the circuit court's order includes well-reasoned findings and conclusions as to all of the assignments of error raised herein. As such, we hereby adopt and incorporate the circuit court's findings and conclusions and direct the Clerk to attach a copy of the circuit court's February 27, 2014, "Final Order Denying Writ Of Habeas Corpus And Dismissing Case" to this memorandum decision.

For the foregoing reasons, we affirm.

---

[1]Petitioner asserted several other grounds in his supplemental petition below but raises no assignments of error in regard to those grounds on appeal. As such, this memorandum decision concerns only the circuit court's ruling on petitioner's claim of ineffective assistance of counsel.

Affirmed.

**ISSUED:**  February 9, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

# IN THE CIRCUIT COURT OF NICHOLAS COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex. rel.
JEFFREY W. STEWART,

      Petitioner,

v.

      CIVIL ACTION NO. 06-C-185

DAVID BALLARD, Warden,
MT. OLIVE CORRECTIONAL COMPLEX,

      Respondent.

## FINAL ORDER DENYING WRIT OF HABEAS CORPUS AND DISMISSING CASE

This matter came before this Court on the petition of Jeffrey W. Stewart and was brought under the provisions of West Virginia Code § 53-4A-1, *et seq.*, as amended. The Petitioner seeks to obtain post-conviction habeas corpus relief from a sentence imposed by this Court on the 9th day of December, 2004.

### I. **Factual and Procedural Background**

1.      On May 12, 2004, the Grand Jury indicted the Petitioner, along with Matthew Bush and Eric Foster, on two (2) counts of Murder, two (2) counts of Malicious Assault, and three (3) counts of Wanton Endangerment Involving a Firearm, for the deaths of Michael Murphy and Travis Painter.

2.      Petitioner's criminal case (Case No. 04-F-53) proceeded to trial beginning on December 7, 2004, which trial took place in Braxton County, West Virginia. On December 9, 2004, the jury returned a verdict of guilty on two (2) counts of second-degree murder, lesser included offenses as contained in Counts One and Two of the indictment.

CIRCUIT CLERK
NICHOLAS COUNTY, WV
2011 FEB 27 PM 3: 28

3. On February 8, 2005, the Court sentenced Petitioner to the maximum sentence of forty (40) years on each count, with said sentences to run consecutively.

4. The Petitioner appealed this conviction and sentence to the Supreme Court of Appeals of West Virginia, which denied the Petitioner appellate review on January 11, 2006.

5. The Petitioner initiated this case on November 13, 2006, by filing a *pro se* petition for writ of habeas corpus in the Circuit Court of Randolph County (Civil Action No. 06-C-238).

6. By order dated November 16, 2006, the Circuit Court of Randolph County transferred Petitioner's habeas corpus petition to the Circuit Court of Nicholas County.

7. Petitioner's habeas corpus petition was docketed in the Circuit Court of Nicholas County on or about December 8, 2006.

8. On March 20, 2007, the Circuit Court of Nicholas County appointed Howard J. Blyler to represent the Petitioner and to aid him in filing an amended petition for a writ of habeas corpus [Doc. No. 4].

9. At a hearing on June 11, 2008, the Court granted motions filed by Mr. Blyler, on behalf of the Petitioner, permitting Petitioner to hire a private investigator to interview two (2) specific witnesses; permitting Petitioner to hire a firearm expert for purposes of analysis of the shot pattern of the shotgun; and directing the State to provide any and all forensic lab results from the braided hair submitted to testing [Doc. No. 14].

10. Pursuant to that order, counsel retained the services of Robert S. White, a forensic chemist and expert witness with regards to gunshot residue and distances. Counsel then moved the Court to permit the expert to conduct testing of the weapon. [Doc. No. 17].

2

11. By letter dated April 27, 2009, Petitioner requested the Court allow Howard Blyler to withdraw as counsel, stating that he had lost trust in Mr. Blyler's representation [Doc. No. 22]. Thereafter, Howard Blyler filed a Motion to Withdaw as Counsel [Doc. No. 27], citing Petitioner's wishes.

12. At a hearing on August 5, 2008, the Court permitted Howard Blyler to withdraw as counsel, and the Court appointed J.B. Rees to represent the Petitioner in all further proceedings [Doc. No. 31].

13. On December 29, 2009, Petitioner filed a *pro se* Motion to Withdrawal Counsel [Doc. No. 33], requesting the court relieve J.B. Rees as counsel; and on May 14, 2010, J.B. Rees filed his Motion to Withdraw [Doc. No. 36], citing Petitioner's *pro se* motion.

14. On May 25, 2010, Petitioner filed a *pro se* Petition for Amended Writ of Habeas Corpus [Doc. No. 39].

15. By order entered on July 27, 2010, the Court permitted J.B. Rees to withdraw as counsel and appointed Jennifer Hewitt to represent the Petitioner in all further proceedings [Doc. No. 52].

16. Due to Petitioner's threat to file a disciplinary complaint against Ms. Hewitt, on December 15, 2010, Jennifer Hewitt filed a Motion to Withdraw as Counsel [Doc. No. 56], which was granted by an order entered on December 16, 2010 [Doc. No. 57].

17. Present counsel, D. Adrian Hoosier, II, was appointed to represent the Petitioner in that order, entered on December 16, 2010 [Doc. No. 57].

18. In a letter dated June 8, 2011 [Doc. No. 61], Petitioner's counsel requested the Court to consider resentencing the Petitioner as an alternative to proceeding with the pending

3

habeas corpus petition. The Court denied Petitioner's request for reconsideration of sentence by order entered on August 2, 2011 [Doc. No. 62].

19. On January 3, 2013, the Petitioner filed another *pro se* **Amended Petition for Writ of Habeas Corpus** [Doc. No. 68] (the "Amended Petition"). That petition raised ten (10) grounds for relief:

    a. Improper Grand Jury testimony

    b. Prosecutorial misconduct in opening statements

    c. Petitioner's confrontation rights were violated

    d. Denial of fundamental fairness by the State's knowing use of false evidence at trial

    e. Defense counsel error rendered Petitioner's trial fundamentally unfair

    f. Constitutionally deficient jury instructions

    g. Evidence was sufficient [sic] to support the conviction for Second Degree Murder

    h. Counsel was ineffective for failing to object to the Prosecutor's improper and misleading comments to the jury

    i. Counsel was ineffective for failing to object to unconstitutional testimony at trial

    j. Counsel rendered ineffective assistance by the collective impact of attorney errors.

20. A status hearing was held in this matter on February 20, 2013.

21. On March 27, 2013, Petitioner, by counsel, filed a **Supplemental Petition for Writ of Habeas Corpus** [Doc. No. 77] (the "Supplemental Petition"). That Supplemental Petition incorporated, by reference, Petitioner's *pro se* Amended Petition, and then set forth the following claims for relief without any further explanation or discussion:

    a. The State gained its indictment through illegal means in improperly influencing the Grand Jury

    b. Prosecutorial Misconduct

        1. Improper Grand Jury Influence
        2. Improper Opening Statement
        3. Improper Closing Statement

4

    4.  Use of false testimony

  c. Ineffective Assistance of Counsel

    1.  Failure to object to prosecutorial misconduct
    2.  Failure to challenge indictment
    3.  Failure to investigate
    4.  Failure to procure expert
    5.  Failure to call witnesses
    6.  Failure to properly voir dire jury
    7.  Failure to include battery instruction to jury
    8.  Failure to call mitigation witnesses
    9.  Failure to call witnesses at sentencing
    10.  Failure to have Petitioner properly evaluated
    11.  Failure to object on hearsay grounds
    12.  Failure to object to State's use of false evidence
    13.  "Opening the door" to Petitioner's polygraph result

  d. Violation of Confrontation Clause to the U.S. and W. Va. Constitutions

  e. Errors with Jury Instructions

  f. Insufficient Evidence to Convict

22.  On May 15, 2013, Respondent filed his Response to the Amended Petition for Writ of Habeas Corpus [Doc. No. 84].

23.  A final evidentiary hearing was held on May 16, 2013. At that hearing, Petitioner's counsel had the Petitioner thoroughly review a Habeas Corpus Notification Form [Doc. No. 86], which included a list of possible grounds for relief, pursuant to *Losh v. McKenzie*, 166 W. Va. 752, 277 S.E.2d 606 (1981). The Petitioner initialed each of the following grounds for habeas corpus relief as a ground he claimed for relief:[1]

  a. (2) Statute under which conviction obtained unconstitutional
  b. (3) Indictment shows on its face that no offense was committed
  c. (4) Prejudicial pre-trial publicity
  d. (7) Mental incapacity at time of crime
  e. (11) Denial of counsel
  f. (14) Consecutive sentences for same transaction
  g. (15) Coerced confessions

---

[1] At the hearing on May 16, 2013, Petitioner's counsel indicated that Petitioner was also raising a claim under number (22) on the Habeas Notification Form for "irregularities in arrest." May 16 Transcript, p. 9, lines 20-22. However, number (22) on the form was "double jeopardy" and number (23) was "irregularities in arrest"; and the Petitioner did not initial the blank beside either (22) or (23) on the Habeas Corpus Notification Form.

5

h. (17) State's knowing use of perjured testimony
i. (21) Ineffective assistance of counsel
j. (28) Challenge to composition of grand jury or its procedures
k. (30) Defects in indictment
l. (34) Refusal to subpoena witnesses
m. (37) Non-disclosure of Grand Jury Minutes
n. (41) Constitutional errors in evidentiary rulings
o. (42) Instructions to the jury
p. (44) Claims of prejudicial statements by prosecutor
q. (46) Acquittal of co-defendant on same charge(s)[2]
r. (50) Severer sentence than expected
s. (51) Excessive sentence

Thereafter, counsel for Petitioner proceeded to put on evidence in support of Petitioner's petition for habeas corpus relief.

24.    At the conclusion of the hearing on May 16, 2013, the Court entered a briefing schedule, directing the parties to file briefs summarizing their respective positions on Petitioner's petition [Doc. No. 93]

25.    Petitioner filed his Memorandum in Support of Petitioner's Request for Habeas Corpus Relief [Doc. No. 91] (the "Memorandum in Support") on or about June 17, 2013.

26.    On August 12, 2013, the Court entered an Agreed Order Granting Thirty Day Extension for the Filing of Respondent's Brief [Doc. No. 96].

27.    Respondent did not file its Brief in Response to the Petitioner's Memorandum in Support of Request for Habeas Corpus Relief [Doc. No. 98] (the "Response") until on or about October 10, 2013.

---

[2] During the hearing on May 16, 2013, Petitioner's counsel indicated on two separate occasions that Petitioner was raising the ground for relief numbered (45) and that Petitioner was to initial beside (45). However, the Petitioner did not initial by (45), which would have been a claim based on "sufficiency of evidence." Instead, the Petitioner initialed by (46), which is a claim based on "acquittal of co-defendant on same charge(s)."

6

## II. Petitioner's Grounds for Habeas Corpus Relief

Based upon Petitioner's *pro* se Amended Petition, Supplemental Petition, Memorandum in Support, and the completed *Losh* list, the Court finds that Petitioner's grounds for habeas corpus relief can be summarized under the following categories, each of which is addressed in detail below:

A. Ineffective Assistance of Counsel
B. Improper Grand Jury Proceedings
C. Prosecutorial Misconduct
D. Violation of Confrontation Clause
E. Errors With Jury Instructions
F. Insufficient Evidence to Convict
G. Additional Grounds Indicated on *Losh* List

A petition for a writ of habeas corpus pursuant to West Virginia Code Sections 53-4A-1, *et seq.* "serves as a collateral attack upon a conviction under the claim that the conviction was obtained in violation of the state or federal constitution." *Edwards v. Leverette*, 163 W. Va. 571, 576, 258 S.E.2d 436, 439 (1979). To prevail in post-conviction habeas corpus proceedings, the "petitioner has the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release." Syl. Pt. 1, *in part, Scott v. Boles*, 150 W. Va. 453, 147 S.E.2d 486 (1966). After carefully considering the parties' pleadings, along with all of the evidence and arguments presented in connection therewith, for the reasons explained below, the Court concludes that the Petitioner has failed to establish any basis for the requested post-conviction relief.

## III. Discussion

### A. Ineffective Assistance of Counsel

In the Petitioner's *pro* se Amended Petition, Supplemental Petition, and Memorandum in Support, Petitioner stated various reasons why he believes his trial counsel, Stephen O.

7

Callaghan, was ineffective. In the State of West Virginia, claims of ineffective assistance of counsel are evaluated by the standards set forth in *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). In *Miller*, the Supreme Court of Appeals of West Virginia adopted the two-prong test established by the United States Supreme Court's ruling in *Strickland v. Washington*, which held that a Petitioner most prove that:

> (1) Counsel's performance was deficient under an objective standard of reasonableness; and
>
> (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114, *citing Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

With respect to the first, performance-prong, the *Miller* Court offered the additional guidance that:

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *Id.* Where, as in the present case, counsel's alleged ineffective assistance arises from trial "'strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests; unless no reasonably qualified defense attorney would have so acted in the defense of an accused.' Syl. Pt. 21, *State v. Thomas*, 157 W.Va. 640 (1974)." Syl. Pt. 3, *State v. Frye*, 221 W.Va. 154, 650 S.E.2d 574 (2006).

8

Quoting *Strickland*, the West Virginia Supreme Court noted that, in reviewing counsel's performance, a court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Miller*, 194 W. Va. at 15, 459 S.E.2d at 126, *quoting Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, 90 L.Ed.2d at 694. That presumption was further explained in the *Miller* opinion, with the Court stating that:

> . . . we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

*Miller*, 194 W. Va. at 16, 459 S.E.2d at 127.

In his pleadings and during the evidentiary hearing on May 16, 2013, the Petitioner listed the following specific reasons that he believes he was denied effective assistance of counsel:

1. Failure to object to prosecutorial misconduct[3]
2. Failure to challenge indictment
3. Failure to investigate
4. Failure to procure expert
5. Failure to call witnesses
6. Failure to properly voir dire jury
7. Failure to include battery instruction to jury
8. Failure to object to a constitutionally deficient self-defense instruction[4]
9. Failure to call mitigation witnesses
10. Failure to call witnesses at sentencing
11. Failure to have Petitioner properly evaluated
12. Failure to object on hearsay grounds[5]

---

[3] Petitioner's allegations of prosecutorial misconduct are discussed in detail under section "C" below.

[4] The self-defense instruction is discussed in detail under section "E" below.

9

13. Failure to object to State's use of false evidence[6]
14. "Opening the door" to Petitioner's polygraph result[7]

Petitioner failed to provide much argument, explanation, or any evidence to support the reasons he contends he was denied effective assistance of counsel.

Having carefully reviewed each of the Petitioner's claims of ineffective assistance of counsel and the evidence presented during the evidentiary hearings, the Court concludes that the Petitioner failed to prove that Mr. Callaghan's assistance was deficient or ineffective under the standard set forth in *Miller*. At the hearing on May 16, 2013, the testimony elicited from both Petitioner and Mr. Callaghan indicated that Mr. Callaghan was successful in obtaining a change of venue (May 16 Transcript, p. 80); preventing numerous other charges against the Petitioner[8] from being presented at trial (May 16 Transcript, p. 77); and reducing the charges of two (2) counts of First Degree Murder to two (2) counts of Second Degree Murder (May 16 Transcript, pp. 56-57, 77). Additionally, the majority of the Petitioner's claims relate to Mr. Callaghan's trial strategy, and this Court finds that "a reasonable lawyer

---

[5] Petitioner stated that his counsel "didn't object to things that was goin' wrong" during the trial (May 16 Transcript, p. 59), but the Petitioner did not specify any particular hearsay testimony to which he believes his counsel should have objected.

[6] In support of this claim, the Petitioner stated generally that he believed his counsel "didn't object to things that was goin' wrong" during the trial and "most of the evidence." May 16 Transcript, p. 59-61. Upon further questioning, the Petitioner referenced the lock of hair, which was not tested, and the fact that the medical examiner did not fire the gun. May 16 Transcript, p. 61. However, Petitioner failed to prove that this evidence was false.

[7] Petitioner's claim related to "opening the door" on the polygraph was one of the few grounds that Petitioner explained beyond a mere allegation. At trial, Mr. Callaghan was attempting to impeach Deputy Shafer by showing that, when he interviewed the Petitioner, he only wrote down the incriminating information. During this line of questioning, Deputy Shafer mentioned that the Petitioner refused to take a polygraph. May 16 Transcript, p. 78; Trial Transcript, Vol. IV, p. 64, lines 22-24. At the time of trial, Mr. Callaghan explained that he "did not immediately raise an objection because [he] didn't want to highlight it" for the jury, and he proceeded to move for a mistrial on that basis, which motion was denied. Trial Transcript, Vol. IV, pp. 68-69. Additionally, the Court provided a curative instruction in the jury charge. *See*, Trial Transcript, Vol. IV, p. 75, lines 7-10.

[8] In the Indictment, the Petitioner was also charged with two (2) counts of Malicious Assault and three (3) counts of Wanton Endangerment Involving a Firearm. None of these charges were presented to the jury.

10

would have acted, under the circumstances, as [Mr. Callaghan] acted in the case at issue." Syl. Pt. 6, *Miller*, 194 W. Va. 3, 459 S.E.2d 114. Mr. Callaghan testified that he thoroughly discussed all trial strategies with the Petitioner (May 16 Transcript, p. 76), and the Petitioner testified that he had no disagreements with Mr. Callaghan during the trial (May 16 Transcript, p. 52). Additionally, the Petitioner's claims that Mr. Callaghan failed to object to certain prosecutorial misconduct, hearsay and allegedly false evidence are unfounded; because, as discussed in detail below, any such conduct or evidence was not objectionable. A review of the trial transcript shows that Mr. Callaghan made appropriate objections throughout the proceedings, and any decision to not raise an objection was a permissible, strategic determination by Mr. Callaghan. Finally, the Petitioner failed to show that Mr. Callaghan did not make a reasonable investigation of the case so as to properly make informed professional decisions.

Significantly, even if, *arguendo*, the Petitioner's counsel had provided ineffective, incompetent assistance, the Petitioner's claim for relief on this basis would nevertheless fail, because the Petitioner suffered no prejudice as a result of any alleged conduct on the part of his counsel. Specifically, after consideration of the first, performance-prong, if it is determined that defense counsel acted incompetently, then it is necessary to address the second prong of the *Miller/Strickland* test: to determine whether such incompetence resulted in any prejudice to the defendant. *See*, Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). "To demonstrate prejudice, a defendant must prove there is a 'reasonable probability' that, absent the errors, the jury would have reached a different result." *Id.*, 194 W. Va. at 15, 459 S.E.2d at 126, *citing Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L.Ed.2d at 698. The Petitioner has failed to meet this burden by failing to produce any

11

evidence to show that, but for counsel's errors, the results of the proceedings would have been different.[9] Syl. Pt. 5, in part, *Miller*. Absent any prejudice to the Petitioner as a result of some conduct or omission on the part of his counsel, the Petitioner cannot prevail on his claim for post-conviction relief on the basis of ineffective assistance of counsel.

After reviewing all pertinent evidence and arguments, this Court now concludes, as a matter of law, that the conduct of the Petitioner's defense counsel was well within the range of strategic decisions that a reasonable, competent criminal lawyer would have made under all the circumstances of the case. Moreover, even if, *arguendo*, there were errors or mere unsuccessful strategic decisions made by the Petitioner's counsel, such errors were harmless and did not cause any prejudice to the Petitioner, as there was no reasonable probability that the proceeding would have ended differently if not for such alleged errors or tactical decisions. Accordingly, the Court finds that the Petitioner has failed to meet his burden of proving that he is entitled to habeas corpus relief on the basis of his claims of ineffective assistance of counsel.

### B.     Improper Grand Jury Proceedings

On May 12, 2004, the Prosecutor presented the case before the Grand Jury, which returned an indictment against Petitioner and his co-defendants, Matthew Bush and Eric Foster. In the Petitioner's *pro* se Amended Petition, Supplemental Petition, and Memorandum in Support, Petitioner claimed that the cumulative effect of illegal testimony

---

[9] Even if counsel had made the alleged errors, the Court does not believe that the results of the proceedings would have been different but for said errors because the Petitioner himself testified during the trial that he shot both victims with the intent to hit and/or kill them. Trial Transcript, Vol. III, p. 278, lines 2-7, with the exchange between the Prosecutor and the Petitioner reading as follows:

Q     Did you shoot at Travis Painter with the intent to hit him?
A     Yes.
Q     Did you shoot at Mike Murphy with the intent to wound or kill him?
A     Yes.

12

placed before the Grand Jury improperly influenced the jurors to return an indictment, which denied Petitioner due process of law. Specifically, the Petitioner challenged the testimony of Deputy W.K. Shafer before the Grand Jury on the basis that he testified to statements made by other officers and witnesses, which statements constituted unreliable hearsay. Additionally, Petitioner claimed that Kim Halstead's testimony at trial was different than her statement to which Deputy Shafer testified before the Grand Jury. Finally, Petitioner stated that Deputy Shafer improperly told the Grand Jury that the other two defendants offered to take polygraph tests. For these reasons, Petitioner claimed that he is entitled to habeas corpus relief on the basis of improper grand jury proceedings.

Both the United States Supreme Court and the West Virginia Supreme Court of Appeals have stated that the function of the grand jury is not to determine the truth of the charges against the defendant but to determine whether there is sufficient probable cause to require the defendant to stand trial. *See, Bracy v. U.S.*, 435 U.S. 1301, 98 S.Ct. 1171, 55 L.Ed.2d 489 (1978); *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 665, 383 S.E.2d 844, 847 (1989). It is for this reason that both Courts have held that an indictment is not invalidated by the grand jury's consideration of hearsay testimony. *See, Bracy*, 435 U.S. at 1302-1303, 98 S.Ct. at 1172 ("while the presentation of inadmissible evidence at trial may pose a substantial threat to the integrity of that factfinding process, its introduction before the grand jury poses no such threat"); *Costello v. U.S.*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *Barker v. Fox*, 160 W. Va. 749, 238 S.E.2d 235 (1977). The West Virginia Court has stated that "if there was any legal evidence before the grand jury, the court will not inquire into its sufficiency; nor will it quash the indictment in such a case because some illegal evidence was also received." *State v. Clark*, 64 W. Va. 625, 63 S.E. 402, 404 (1908); *see also*

*State ex rel. Pinson v. Maynard,* 181 W.Va. at 665-666, 383 S.E.2d at 847-848 ("[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency."). The United States Supreme Court more thoroughly explained that:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

*Costello,* 350 U.S. at 363, 76 S.Ct. at 408-409.

In the present case, the Petitioner failed to produce any evidence to show any willful or intentional fraud by the State; and having reviewed the transcript of the Grand Jury proceedings and the trial transcript, this Court does not find evidence of any fraud. Therefore, it is not necessary to inquire into the sufficiency or legality of the evidence presented to the Grand Jury. After a thorough review of the transcript of the Grand Jury proceedings, this Court finds that probable cause supported the indictment. Accordingly, Petitioner's arguments regarding the Grand Jury proceedings are without merit as any errors were corrected at trial, and on the basis of the evidence presented at trial, the petit jury determined Petitioner's guilt. As such, Petitioner has failed to meet his burden of proving that he is entitled to habeas corpus relief on the basis of the Grand Jury proceedings.

14

## C.    Prosecutorial Misconduct

In the Petitioner's *pro se* Amended Petition, Supplemental Petition, and Memorandum in Support, Petitioner raised the additional ground of prosecutorial misconduct, which can be divided into three (3) sub-categories: improper opening statement, improper closing statement, and use of false testimony.[10]  Each of those allegations is addressed below.  With respect to a claim for prosecutorial misconduct, the West Virginia Supreme Court of Appeals has repeatedly stated that "[a] judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sparks*, 171 W. Va. 320, 298 S.E.2d 857 (1982), *quoting* Syl. Pt. 5, *State v. Ocheltree*, 170 W. Va. 68, 289 S.E.2d 742 (1982).  More recently, the West Virginia Supreme Court of Appeals has given the further guidance that:

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. Syllabus Point 6, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995).

Syl. Pt. 8, *State ex rel. Kitchen v. Painter*, 226 W.Va. 278, 700 S.E.2d 489 (2010).  Therefore, each of the Petitioner's allegations is addressed on the basis of these four (4) factors.

### 1.    Improper opening statement

The Petitioner first alleged that the Prosecutor made improper comments during opening statements, such as alluding to evidence when there was no reasonable basis for

---

[10] Petitioner also alleged that the prosecution improperly influenced the Grand Jury.  The legality of the Grand Jury proceedings is thoroughly addressed under subsection "B." above.

15

believing that such evidence would be tendered or admitted. Petitioner further contended that the Prosecutor described what he claimed took place on the night of the incident, which description was not supported by the evidence. Specifically, the Petitioner stated that the following representations during opening statements were not supported by the evidence: (a) that the Petitioner started the gun fight; (b) that the victim's bullets into the truck did not strike anyone, when Petitioner contends that they did strike Eric Foster; (c) that Eric Foster was shot by Petitioner's shotgun, because Petitioner claims that he was shot by Painter; (d) that the victims were using flashlights rather than high-powered, blinding spotlights; (e) that Petitioner told witnesses he would kill them if they told; and (f) that the shooting of the victims was premeditated. Petitioner claimed that all of this was no more than the Prosecutor's opinion.

The State responded that the Prosecutor's comments in opening statements were not improper or prejudicial because a prosecutor's suggestion of a plausible inference to be drawn from the evidence is proper. This Court agrees that it was not improper for the Prosecutor to draw a reasonable inference from the evidence in the case when making his opening statements. *See, e.g., U.S. v. Washington*, 677 F.2d 394, 396 (4th Cir. 1982) (prosecutor's comments that went beyond the evidence in the case were "merely suggesting a plausible inference to be drawn from the evidence. Such suggestions are proper."), *citing U.S. v. Welebir*, 498 F.2d 346, 351-52 (4th Cir. 1974). Counsel for the Petitioner did not object to any of the prosecutor's comments or inferences made during opening statements.[11] *See, e.g., State v. Coulter*, 169 W.Va. 526, 530, 288 S.E.2d 819, 821 (1982). Additionally, this Court

---

[11] *See,* Trial Transcript, Vol. I, p. 59, line 18 through p. 70, line 9. To the extent Petitioner claims that his counsel's failure to object during the opening statements constituted ineffective assistance of counsel, such ground is thoroughly addressed under section "A" above.

16

correctly instructed the jury that nothing said by the lawyers, including their opening statements, may be considered as evidence.[12]

Even if the Prosecutor's comments were improper, the Petitioner failed to put forth any evidence to show that they were clearly prejudicial or resulted in manifest injustice. *See,* Syl. Pt. 5, *Sparks,* 171 W. Va. 320, 298 S.E.2d 857. No evidence was introduced to show that the comments misled or improperly influenced the jury's ability to weigh the evidence or that the remarks were deliberately placed before the jury to divert the jury's attention to extraneous matters. *See,* Syl. Pt. 8, *State ex rel. Kitchen v. Painter,* 226 W.Va. 278, 700 S.E.2d 489 (2010). To the contrary, the comments were simply legitimate inferences drawn from the evidence to be presented. Moreover, absent the remarks, ample, competent proof was introduced at the trial of this case to establish the guilt of the Petitioner.[13] *Id.*

---

[12] The Judge's Charge to Jury provided in relevant part:

> Nothing said or done by the lawyers who have tried this case can be considered by you as evidence of any fact in this case. Opening statements of the lawyers are intended to give you a brief outline of what each side expects to provide so that you may better understand the testimony of witnesses.
>
> The closing arguments of the lawyers are often helpful in refreshing your recollection as to the testimony of the witnesses and such facts as may be developed thereby, but your verdict shall not be based upon the statements made to you by the lawyers at the opening of the trial or upon their closing arguments at the end of the trial. Such statements and arguments are not evidence in this case.
>
> The function of the lawyers is to point out those things they believe are most significant or most helpful to their side of the case, and in doing so, to call to your attention certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls this case.

Judge's Charge to Jury, pp. 2-3 [Doc. No. 103 in 04-F-53] (emphasis added).

[13] For instance, the Petitioner testified during the trial that he shot Travis Painter with the intent to hit him and that he shot Mike Murphy with the intent to wound or kill him. Trial Transcript, Vol. III, p. 278, lines 2-7, which exchange between the Prosecutor and the Petitioner reads as follows:

Q   Did you shoot at Travis Painter with the intent to hit him?
A   Yes.
Q   Did you shoot at Mike Murphy with the intent to wound or kill him?
A   Yes.

17

Accordingly, the Petitioner is not entitled to habeas corpus relief based on any allegedly improper remarks by the prosecution during opening statements.

## 2. Improper closing statement

The Petitioner also contended that the Prosecutor made improper comments during closing statements. Specifically, the Petitioner alleged that the Prosecutor improperly stated (a) that the actions were not in self-defense, and (b) that Petitioner had an intent to kill because Petitioner fired a second shot at Mike Murphy, shooting a hole in his jacket and shooting off a lock of his hair. The Petitioner argued that these statements were improper because the State did not have the jacket tested to determine if the bullet hole came from Petitioner's gun and did not have the lock of hair tested to determine if it was Mike Murphy's hair. Again, Petitioner alleged that the Prosecutor improperly made comments that were the Prosecutor's own opinion of the evidence.

The analysis of the prosecution's remarks in the closing statements is almost identical to the consideration of the comments made during opening statements. Even if the Prosecutor's comments were improper, the Petitioner failed to put forth any evidence to show that they were clearly prejudicial or resulted in manifest injustice. *See,* Syl. Pt. 5, *Sparks,* 171 W. Va. 320, 298 S.E.2d 857. No evidence was introduced to show that the comments misled or improperly influenced the jury's ability to weigh the evidence or that the remarks were deliberately placed before the jury to divert the jury's attention to extraneous matters. *See,* Syl. Pt. 8, *State ex rel. Kitchen v. Painter,* 226 W.Va. 278, 700 S.E.2d 489 (2010). To the contrary, the comments were simply legitimate inferences drawn from the evidence.

18

Moreover, absent the remarks, ample, competent proof was introduced at the trial of this case to establish the guilt of the Petitioner.[14] *Id.*

Additionally, the West Virginia Supreme Court of Appeals has held that "[a]s a general rule, in order to take advantage of allegedly improper remarks by a prosecuting attorney during closing argument, an objection must be made and counsel must request the court to instruct the jury to disregard them." *Sparks,* 171 W. Va. at 328, 298 S.E.2d at 865, *citing State v. Coulter,* 169 W.Va. 526, 530, 288 S.E.2d 819, 821 (1982). At the trial of this case, Petitioner's counsel did not object to any of the Prosecutor's comments made during closing statements.[15] Additionally, this Court correctly instructed the jury that nothing said by the lawyers, including their closing statements, may be considered as evidence.[16] Accordingly, the Petitioner is not entitled to habeas corpus relief based on any allegedly improper remarks by the prosecution during closing statements.

3.     **Use of false testimony**

Finally, the Petitioner claimed prosecutorial misconduct on the basis of allegedly false evidence introduced by the State in the trial of this matter. Petitioner contended that the State used false evidence to discredit the Petitioner's version of events and to support a differing version of what took place at the crime scene. Specifically, the Petitioner claimed that the victim, Michael Murphy, pointed a gun, an SKS,[17] at Eric Foster's head, had his finger on the

---

[14] *See* note 13, *supra.*

[15] *See.* Trial Transcript, Vol. IV p. 103, line 5 through p. 120, line 18; and p. 131, line 22 through p.134, line 16. To the extent Petitioner claims that his counsel's failure to object during the closing arguments constituted ineffective assistance of counsel, such ground is thoroughly addressed under section "A" above.

[16] See note 12, *supra.*

[17] Trial Transcript, Vol. III, p. 248, lines 15-20.

19

trigger, and fired one round after he was shot by the Petitioner's gun.[18] Deputy Shafter testified to a different version of events and testified that he did not find a shell casing from Michael Murphy's rifle.[19] The Petitioner contended that this was the knowing presentation of false evidence by the prosecution, which was used to impeach the Petitioner and bolster the State's witnesses.

However, the Petitioner failed to produce any evidence or other argument to show that any of the evidence presented by the State in the trial of this matter was false. Having reviewed the trial transcript, this Court finds that there is no showing of any use of false evidence or testimony. During the trial, the Petitioner was cross-examined with evidence, which had been presented through other witnesses at trial, particularly with the testimony that officers did not find a shell casing from Michael Murphy's rifle.[20] Although this evidence did contradict Petitioner's testimony, there is no showing that it was false or that any false evidence or testimony was used at trial. Accordingly, Petitioner's claim is unfounded. There is no showing that Petitioner's trial was fundamentally unfair or conducted in violation of due process. Therefore, Petitioner is not entitled to habeas corpus relief on the basis of alleged prosecutorial misconduct.

---

[18] *See,* Trial Transcript, Vol. III, p. 255, lines 1-6 (Petitioner's testimony that he saw Mike Murphy fire the SKS but that "[i]t was just a reaction. . . . He did fire it, but it wasn't inside the truck or nothing like that."); Trial Transcript, Vol. III, p. 265, lines 12-17 (Petitioner's testimony on cross-examination that Mike Murphy shot right after he did).

[19] *See,* Trial Transcript, Vol. II, p. 89, lines 21-23 (Deputy Shafer's testimony that he did not recover an SKS rifle casing from the scene of the crime); Trial Transcript, Vol. III, p. 31, lines 16-21 (Deputy Shafer's testimony that he looked for SKS casings and couldn't find any); Trial Transcript, Vol. III, p. 55, lines 20-22 (Deputy Shafer's testimony that his investigation did not show that Mr. Murphy fired).
However, Deputy Shafer did admit, on cross-examination, that there could be other casings at the scene that he did not recover. Trial Transcript, Vol. III, p. 31-32.

[20] *See,* Trial Transcript, p. 266, lines 7-15 (Prosecutor asking Petitioner on cross-examination about Deputy Shafer's testimony that they found no SKS casings at the scene and that Matt Bush did not testify that Mike Murphy fired off a shot).

20

## D. Violation of Confrontation Clause

In the Petitioner's *pro* se Amended Petition, Supplemental Petition, and Memorandum in Support, Petitioner raised the additional ground that his confrontation rights were violated when the State's witnesses testified to statements by other witnesses who did not appear at trial to give their testimony in person. Specifically, the Petitioner challenges the testimony of the following four (4) witnesses:

1. Deputy P.D. Kutcher testified to the statement given by Petitioner's co-defendant Eric Foster, without having Mr. Foster present for cross-examination.[21] Petitioner contends that this statement was used to place Petitioner at the scene of the shooting.

2. Corporal Shafer testified that Eric Foster told him basically the same thing that he had told Deputy Kutcher earlier.[22]

3. Corporal Shafer testified that the mother of Petitioner's co-defendant Matthew Bush told him the bloody clothes found in her washer did not belong to Mr. Bush.[23]

---

[21] *See* Trial Transcript, Vol. II, pp. 11-13. Deputy Kutcher testified about what happened when he was dispatched to the residence of Eric Foster on December 31, 2013. He testified about what Eric Foster told him when they arrived at Mr. Foster's residence, including the fact that Matt Bush and the Petitioner had been with him during the altercation at Murphy's residence.

[22] *See* Trial Transcript, Vol. II, pp. 31-33. Corporal Shafer testified about what happened after he joined Deputy Kutcher and Sergeant Robinson in the investigation, after they had already gone to Mr. Foster's residence to get the initial report. He testified that he and Deputy Kutcher reviewed the initial statement given by Mr. Foster. Corporal Shafer then went back to Mr. Foster's residence, "and Eric basically told [him] the same story that he had told Deputy Robinson and Deputy Kutcher earlier."

[23] *See* Trial Transcript, Vol. II, pp. 98-99. Corporal Shafer testified that he recovered some clothing from the residence of Petitioner's co-defendant Matt Bush. He stated that when he went to the residence, Matt Bush's mom was there and "[s]he approached me with the clothes that was in the washer. She said that there was some clothes in the washer. She said that they wasn't her clothes - - or, I'm sorry - - wasn't her son's clothes, being Matt Bush's." Those items of clothing were then admitted into evidence. Although Petitioner claims this implicated Petitioner as the owner of the clothing, no mention was made by Matt Bush's mom as to who might be the owner of the clothes.

21

4. Corporal Shafer testified to certain items seized pursuant to a search warrant that was executed by Sergeant Plummer and to reports completed by Sergeant Plummer, who was not present at trial.[24]

The Petitioner challenged each of these four (4) testimonies as violations of his confrontation rights because he alleged that Mr. Foster, Ms. Bush and Sergeant Plummer were all available to testify during the trial. It does appear that each of these statements could fall within the scope of "testimonial statements" which may not be admitted through a third party unless the original witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness. *See, Mechling,* 219 W. Va. 366, 373, 633 S.E.2d 311, 318 (2006); *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[25] However, "[u]pon a careful and thorough review of the record, this Court finds that it is not necessary to delve into the issue of [the admissibility of each statement] . . . Assuming, arguendo, that the . . . statements should have been suppressed, this Court finds that their admission into evidence at trial was, at worst, harmless error." *Farmer v. McBride,* 224 W. Va. 469, 481, 686 S.E.2d 609, 621 (2009).

None of the four (4) statements directly inculpated the Petitioner. The two statements from Eric Foster only indicated that a person named "Jeff" was with them at the scene, and

---

[24] *See* Trial Transcript, Vol. III, pp. 24-25. During the course of being cross-examined by Petitioner's counsel about items seized from the scene, Corporal Shafer was asked about a shotgun wad retrieved, and he testified that it was retrieved pursuant to a search warrant executed by Sergeant Plummer, and that, based on Sergeant Plummer's notes, it was found 'laying on boards across from driveway.' He further explained that Sergeant Plummer went back up to the scene on a search warrant and that he did not go with Sergeant Plummer. In response to another question from Petitioner's counsel, Corporal Shafer also identified a 9-mm casing found at the scene by Sergeant Plummer, and he indicated where Sergeant Plummer's notes said it was found.

[25] The State argues that the Petitioner's trial was held in December 2004, and that *Crawford* was not decided until March 2004 and was not adopted by the West Virginia Supreme Court of Appeals until the *Mechling* decision in 2006. However, this Court does not find the State's argument persuasive because, even prior to *Crawford,* the statements would not have been admissible unless it was shown that the witness was unavailable for trial and that the witness's statement bore "adequate indicia of reliability." *See, Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

the Petitioner himself told the jury that he was at the scene of the shooting and that he fired a 16-gauge shotgun at the victims.[26] Petitioner's co-defendant, Matt Bush, also testified that the Petitioner was at the scene of the shooting.[27] Ms. Bush's statement only indicated the clothes in her washing machine did not belong to Matt Bush, without any mention of Petitioner. Finally, the testimony from Sergeant Plummer only stated where he found certain items at the crime scene. Additionally, the evidence put forth in these challenged statements was presented to the jury through other means, so was not critical to the jury's consideration of the evidence or its finding of guilt.

For all of the foregoing reasons, even if the admission of the four (4) statements was in error, such error was harmless beyond a reasonable doubt. *See,* Syl. Pt. 5, *State ex rel. Grob v. Blair,* 158 W. Va. 647, 214 S.E.2d 330 (1975). Petitioner did not make any argument to show that the outcome of his trial would have been different if the statements had been excluded. At the trial, the Petitioner himself testified that he shot at the victim Travis Painter with the intent to hit him and that he shot at the victim Mike Murphy with the intent to wound or kill him.[28] Therefore, having reviewed these admissions and the other testimony and evidence presented to the jury, the Court finds that the outcome of the trial would have been no different even if the statements in question had been excluded from evidence.

---

[26] *See,* Trial Transcript, Vol. III, p. 246-251 (Petitioner's testimony about the incident).

[27] Trial Transcript, Vol. III, p. 104-113 (Matt Bush's testimony placing Petitioner at the scene of the incident).

[28] Trial Transcript, Vol. III, p. 278, lines 2-7, which exchange between the Prosecutor and the Petitioner reading as follows:

| Q | Did you shoot at Travis Painter with the intent to hit him? |
|---|---|
| A | Yes. |
| Q | Did you shoot at Mike Murphy with the intent to wound or kill him? |
| A | Yes. |

23

Accordingly, the Petitioner is not entitled to habeas corpus relief on the basis of the admission of the four (4) statements listed above.

### E. Errors with Jury Instructions

In the Petitioner's *pro se* Amended Petition, Supplemental Petition, and Memorandum in Support, Petitioner claimed that the Court denied Petitioner due process of law by giving a constitutionally deficient self-defense instruction. Specifically, the Petitioner contended that it was a constitutional error to give an instruction on defense of another, which included a duty to retreat, and that the instruction was an incorrect statement of the law under the circumstances of the case and was confusing and misleading.

At Petitioner's trial, the Court gave the jury the following instruction as it relates to self-defense, which instruction had been thoroughly reviewed and revised by counsel[29]:

### SELF-DEFENSE

One of the questions to be determined by you in this case is whether or not this defendant acted in self-defense so as to justify his acts. Under the laws of this State, if this defendant was not the aggressor, and had reasonable grounds to believe, and actually did believe, that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant, then he had the right to employ deadly force in order to defend himself. By deadly force is meant force which is likely to cause death or serious bodily harm.

In order for this defendant to have been justified in the use of deadly force in self-defense, he must not have provoked the assault on himself or have been the aggressor. Mere words, without more, do not constitute provocation or aggression.

The circumstances under which he acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated, the reasonable belief that the other person was then about to kill him or to do him serious bodily harm. In

[29] At the conclusion of the second day of trial, the Court asked counsel if they had reviewed the draft jury charge yet, and they indicated that they would be reviewing it that evening. *See* Trial Transcript, Vol. III, p. 282, lines 12-24, and p. 283, lines 1-6. On the morning of the third and final day of trial, counsel presented and argued their final changes to the jury charge, none of which dealt with the self-defense instruction. Trial Transcript, Vol. IV, pp. 5-14.

24

addition, this defendant must have actually believed that he was in imminent danger of death or serious bodily harm and that deadly force must be used to repel it.

The right of self-defense may be exercised on behalf of another. What the defendant, Jeffrey Wayne Stewart, may lawfully do on behalf of himself, when threatened with death or great bodily harm, he may do in behalf of another.

When there is a quarrel between two or more persons and both or all are at fault, and a combat as a result of such quarrel takes place and death ensues as a result, in order to reduce the offense to killing in self-defense, two things must appear from the evidence and circumstances in the case: first, before the mortal shot was fired, the person firing the shot declined further combat, and retreated as far as he could with safety, and second, that he necessarily killed the deceased in order to preserve his own life or to protect himself from great bodily harm.

If evidence of self-defense is present, the State must prove beyond a reasonable doubt that this defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that this defendant did not act in self-defense, you must find this defendant not guilty. In other words, if you have a reasonable doubt as to whether or not this defendant acted in self-defense, your verdict must be not guilty.

You do not have to believe that the defendant is innocent of the charge against him in order to find a verdict of not guilty. Your verdict of not guilty means that the State has failed to prove to you the guilt of the defendant beyond a reasonable doubt and that the defendant is therefore entitled to a Judgment of Acquittal.

Judge's Charge to Jury, in relevant part [Doc. No. 103 in 04-F-53] (emphasis added). In his Memorandum in Support, the Petitioner only cited or referred to the two (2) paragraphs underlined above. By doing so, the Petitioner failed to consider the entirety of the instruction and took the language on defense-of-another out of context. The only paragraph of the charge that deals with defense of another is the paragraph which correctly states that "[t]he right of self-defense may be exercised on behalf of another. What the defendant, Jeffrey Wayne Stewart, may lawfully do on behalf of himself, when threatened with death or great bodily harm, he may do in behalf of another." Judge's Charge to Jury, in relevant part [Doc. No. 103

25

in 04-F-53]. This is an accurate statement of the law on defense of another. *See, e.g., State v. Cook*, 204 W. Va. 591, 515 S.E.2d 127 (1999); *State v. Greer*, 22 W. Va. 800 (1883).

The second paragraph, which is the only portion challenged by Petitioner,[30] is part of the general instruction on self-defense and was never intended to be an instruction on defense of another. Petitioner is attempting to find error by dissecting the charge, without reading it as a whole. The West Virginia Supreme Court of Appeals has made clear that jury instructions are to be reviewed as a whole, and "the entire instruction is looked at when determining its accuracy." *State v. Bradshaw*, 193 W. Va. 519, 543, 457 S.E.2d 456, 480 (1995), *quoted in State v. Guthrie*, 194 W. Va. 657, 671, 461 S.E.2d 163, 177 (1995). An entire reading of the Court's charge shows that the jury was given a complete instruction on self-defense and an accurate instruction on defense of another. The Court chose a working, within its discretion, which best explained the principles of law as they related to the evidence presented at trial. Therefore, the instruction, as a whole, accurately reflects the law as it related to the case, and the Petitioner is not entitled to relief on the basis of the jury charge.

F.     **Insufficient Evidence to Convict**

In the Petitioner's *pro se* Amended Petition, Supplemental Petition, and Memorandum in Support, the Petitioner alleged that the Court abused its discretion in denying Petitioner's Motion for Judgment of Acquittal based on the lack of evidence by the prosecution that the Petitioner did not act in self-defense. The West Virginia Supreme Court has previously concluded that a denial of motion for acquittal does not implicate constitutional rights in such a manner as to be reviewable in habeas corpus. *State ex rel. Farmer v. McBride*, 224 W. Va.

---

[30] Petitioner states that the instruction on defense of another was erroneous because it said that the defendant must have killed the deceased in order to preserve *his own life* or to protect *himself* from great bodily harm. That portion, however, was part of the general self-defense instruction and was not part of the instruction on defense of another.

26

469, 480, 686 S.E.2d 609, 620 (2009); *State ex rel. Edgell v. Painter*, 206 W. Va. 168, 522 S.E.2d 636 (1999). Therefore, this is not a proper ground for habeas relief in this case. Nevertheless, this Court briefly addresses Petitioner's contentions, concluding that sufficient evidence was presented at the trial of this matter to convict the Petitioner.

Counsel for the Petitioner moved twice during the trial for a judgment of acquittal. First, at the close of the State's case, counsel for the Petitioner made an oral motion for judgment of acquittal "based on the fact that the State's evidence, as presented, is insufficient to support a conviction of the Defendant or the charges in the indictment." Trial Transcript, Vol. III, p. 219, lines 11-16. The State responded that they had an eyewitness at the scene of the crime testify in the matter that he saw the Petitioner fire several shots from the vehicle. *Id.*, lines 17-23. Accordingly, the Court properly concluded that, "[v]iewing the evidence in a light most favorable to the State, which one is required to do on a motion for judgment of acquittal or a directed verdict, the Court would find that the State has made a *prima facie* case and would deny the motion for judgment of acquittal for a directed verdict." Trial Transcript, Vol. III, p. 219, line 24 and p. 220, lines 1-5.

Second, at the close of all evidence, Petitioner's counsel again made an oral motion "for a judgment of acquittal on the grounds stated previously. The State's not shown evidence beyond a reasonable doubt to support a conviction for first-degree murder." Trial Transcript, Vol. IV, p. 66, lines 5-9. The State objected "for the same reasons previously stated." *Id.*, lines 10-11. The Court denied the motion, concluding that "there's enough evidence in the record, considering the evidence in the light most favorable to the State, that the jury could find that there was premeditation in this case." *Id.*, lines 12-16.

27

Rule 29(a)[31] of the West Virginia Rules of Criminal Procedure provides that a judgment of acquittal shall be granted "if the evidence is insufficient to sustain a conviction of such offense or offenses." Rule 29(a), W.Va. R. Crim. Pro. Having reviewed the trial transcript, this Court concludes that the evidence presented was sufficient to prove, beyond a reasonable doubt, the essential elements of the crimes charged. Furthermore, the evidence was sufficient to prove, beyond a reasonable doubt, that the Petitioner was not acting in self-defense. In *State v. Foster*, 221 W. Va. 629, 656 S.E.2d 74 (2007), the West Virginia Supreme Court addressed the sufficiency of the evidence presented in the trial of one of Petitioner's co-defendants, which trial involved the same facts and much of the same evidence as in Petitioner's case. In *Foster*, the Court found the evidence that the defendants took guns to the victim's residence sufficient to support a finding the defendants acted with the requisite intent. *Foster*, 221 W. Va. at 639-640, 656 S.E.2d at 84-85. Similarly, in this case, the evidence presented at the trial of this matter, when viewed in the light most favorable to the prosecution, was sufficient to convince a reasonable person, beyond a doubt, that the Petitioner was not acting in self-defense. Accordingly, the evidence was sufficient, and the Petitioner is not entitled to habeas corpus relief on this basis.

G.    **Additional Grounds Indicated on *Losh* List**

At the final evidentiary hearing on May 16, 2013, the Petitioner reviewed a Habeas Corpus Notification Form [Doc. No. 86], otherwise known as a "*Losh* list," and initialed each of the grounds for relief that he claimed. The following grounds were initialed on that list but were not addressed in any other pleading or during the evidentiary hearing:

---

[31] In his Amended Petition, the Petitioner mistakenly cites Rule 29(c), which deals with motions made after discharge of the jury. In this case, both motions were made prior to the jury receiving the case. The first motion was made at the close of the State's case, and the second motion was made at the close of all evidence but prior to the reading of the jury instructions or closing arguments.

28

1. Statute under which conviction obtained unconstitutional
2. Indictment shows on its face that no offense was committed
3. Prejudicial pre-trial publicity
4. Mental incapacity at time of crime
5. Denial of counsel[32]
6. Consecutive sentences for same transaction
7. Coerced confessions
8. Defects in indictment
9. Refusal to subpoena witnesses[33]
10. Non-disclosure of Grand Jury Minutes
11. Constitutional errors in evidentiary rulings
12. Acquittal of co-defendant on same charge(s)[34]
13. Severer sentence than expected
14. Excessive sentence

Petitioner did not provide any argument, explanation, or evidence related to any of these grounds. Accordingly, the list "contains a mere recitation of grounds without adequate factual support" such as would justify summary dismissal under Rule 4(c) of the Rules of Post-Conviction Habeas Corpus Proceedings. At the evidentiary hearing, Petitioner had a full opportunity to present evidence on each of his grounds for relief but failed to produce any evidence on any of the grounds listed above. Therefore, no evidence or argument shows that Petitioner is entitled to relief on any of the above-listed grounds which were initialed on the *Losh* list.

Based on the foregoing findings of fact and discussion, this Court now concludes as a matter of law that the Petitioner's claims for a new trial are without merit. The Court finds

---

[32] To the extent that this ground is related to Petitioner's claim of ineffective assistance of counsel, it is addressed in section "A" above.

[33] To the extent that this ground is related to Petitioner's claim of ineffective assistance of counsel, it is addressed in section "A" above.

[34] At the hearing on May 16, 2013, Petitioner's counsel indicated on two separate occasions that Petitioner was raising the ground for relief numbered (45) and that Petitioner was to initial beside (45). However, the Petitioner did not initial by (45), which would have been a claim based on "sufficiency of evidence." Instead, the Petitioner initialed by (46), which is a claim based on "acquittal of co-defendant on same charge(s)."

29

that the Petitioner has failed to meet his burden of proving that he is entitled to habeas corpus relief.

Accordingly, the Court does hereby **ORDER** that:

1. Petitioner's grounds in the Petitioner's *pro se* Amended Petition, Supplemental Petition and Memorandum in Support are **DENIED**; and

2. The Writ of Habeas Corpus sought by the Petitioner is refused; and

3. It is further **ORDERED** that this case is hereby **DISMISSED** from the docket of this Court.

4. If the Petitioner desires to appeal this dismissal to the Supreme Court of Appeals of West Virginia, the Petitioner shall file with this Court a properly completed Notice of Appeal pursuant to the RULES OF APPELLATE PROCEDURE; and, if necessary, a properly completed Application To Proceed *In Forma Pauper* and Affidavit as set forth in Appendix B of THE RULES GOVERNING POST-CONVICTION HABEAS CORPUS PROCEEDINGS. These materials are to be filed with the Office of the Clerk of the Supreme Court of Appeals of West Virginia no later than thirty (30) days from the entry of this Order.

5. **This is a Final Order.** The Clerk of the Circuit Court shall remove this matter from the docket and send a certified copy of this Order to: D. Adrian Hoosier, II, 120 Capitol Street, Charleston, WV 25301; and James R. Milam, II, Nicholas County Prosecuting Attorney, 511 Church Street, 203 Courthouse Annex, Summersville, WV 26651.

ENTER: ___2-27-14___ _____
Hon. Gary L. Johnson, Circuit Judge

30